Good morning, Your Honors. May it please the Court, I'm Jeremy Barron, and I'm here on behalf of John Matthew Chapman. I'd like to save five minutes for rebuttal, and I will watch the time. Thank you. The parties agree a new trial is necessary based on the judicial coercion issue. I'm happy to answer questions about that issue today, but because it's undisputed, I intend to focus first on the holding element, and then second, time permitting, on the interrogation. Counsel, I do have one question, and I understand the bottom line position taken on the new trial by you and the United States. But my question is, and I didn't see this in the record, and I don't know whether it's in the record, and I would only want you to answer this question based on what's in the record, not if you know the answer, not based on the record. But how did it happen that with all of these very clear, substantive notes, the courtroom deputy and the district judge indicated on the record that there weren't any substantive notes? And again, if that's not in the record, then that's all I'd like you to say. If it is in the record, I'd like to have a better understanding of that, even if it might not affect the bottom line. I don't know the answer, and in any event, it's not in the record. Okay, thank you. Again, I'm happy to answer further questions on that issue. Otherwise, I will turn to the holding element. To prove a Federal kidnapping, it is not enough for the government to establish that the defendant moved a victim. The government must also show that the defendant held, in other words, restrained the victim against the victim's will. In a case involving deception, the holding element requires the use of force or fear or, at a minimum, the willingness to use force or fear if necessary. So, counsel, you're obviously familiar with, although it's 80 years ago, the Supreme Court's decision in Chatwin. Yes. All right, so the Supreme Court said that, I think at 326 U.S. Well, I'm not sure whether this page number goes to the U.S. side or not, but there is no proof that Chapman, Chatwin, or any of the other Petitioners willfully intended through force, fear, or deception to combine the girl against her desire. And doesn't your argument require us to read out of the Supreme Court's opinion or deception? No, Your Honor, because deception can be enough so long as it is backed up by the mens rea of a willingness to use force or fear if necessary. Where does it say that? But that's not what the Supreme Court said. So Chatwin doesn't purport to set out the standard for when deception does or does not qualify as holding. They do say there's no allegation in this case that there was a use of force, fear, or deception, but that's not equivalent to a clear statement that here's the test that courts should apply when there's a case involving deception. Although, counsel, I have to push back on that a little bit. From time to time, the Supreme Court has taken a dim view of our court parsing their language in ways that you're suggesting we should. Understood. But Chatwin did not reach the issue of when deception does or does not qualify. It did not purport to say that deception always qualified. And the facts of Chatwin involve conduct that many people might say is immoral or manipulative or even deceptive. That's a case where the two defendants hired a 15-year-old girl who was intellectually disabled to be a housekeeper and then converted the young girl to their religion. The girl became pregnant, and they took the girl to Mexico so that she could marry one of the two defendants. How is that more immoral than what the evidence the government presented here? We're certainly not trying to compare the morality of either situation. The point is that Chatwin was a case involving immoral and even arguably deceptive conduct. But what the Supreme Court said is we need to be careful here because, quote, were we to sanction a careless concept of the crime of kidnapping, the boundaries of potential liability would be lost in infinity. And the courts need to keep in mind the core of a kidnapping charge, which is the involuntariness of the seizure or confinement. And so courts since Chatwin, including the Fifth Circuit in McGuinness, the Eleventh Circuit in Boone, and the Fourth Circuit in Higgs, have understood the deception requirement to include the willingness to use force or fear if necessary in order to finish the kidnapping if the deceptive ruse fails. And we're asking the court to adopt the standard that's in line with those circuits. And it's important to adopt that standard to carry into effect the cautionary language from Chatwin because if deception is enough to count as holding, you can imagine all sorts of situations where someone's movement is induced by deception that doesn't qualify under the common understanding or the plain text of the kidnapping statute. If there were a surprise party and a husband deceives a wife into coming to a restaurant to go to a surprise party, that's movement induced by deception. If there's a sufficient interstate nexus like the use of a car or a phone, then the government could theoretically pursue a kidnapping prosecution in that type of innocuous situation. Our rule prevents that type of conduct from being improperly charged by the government because if the government needs to establish willingness to use force or fear if necessary, then in the type of innocuous hypotheticals you can imagine involving deception, there isn't going to be that extra backup of willingness to use force or fear if necessary. Here the government presented no evidence that Chatwin was willing to use force or fear or did in fact use force or fear to keep the girlfriend on the interstate trip to Las Vegas. The government in its answering brief does not appear to argue that if the standard is willingness to use force or fear, they can satisfy that standard. They certainly dispute whether that's the standard, but they don't appear to argue that they presented sufficient evidence under that standard. This is not a case where Chatwin brought weapons like a gun or a knife along with him to complete the kidnapping. If the deception failed, he did not take the victim's phone from her. In fact, the girlfriend had the phone on her the entire trip and there's evidence she was texting friends throughout the trip. There is an interrogation that was the centerpiece of the state's case. There are no incriminating statements in the interrogation where Chatwin says anything to the effect of, well, if she had asked to leave, I would have forced her to stay. Nonetheless, and although I understand your point on this, the facts are that he zip-tied her hands and feet around the signpost, put duct tape over her mouth and took pictures of it, and then put duct tape over her nose while she attempted to escape and looked at him. That raises a separate issue. I understand, but those are essentially the undisputed facts, right? Well, the defense would certainly dispute Chatwin's intent and maintain at trial that this was an accidental death, not a purposeful death. But even if we assume the government presented sufficient evidence of an intentional death, these are two different types of intent that we're considering here. There is an intent, an alleged intent to kill if everything goes according to plan. And then there's the separate question of whether Chatwin would have been willing to use force or fear if, let's say, in Colorado, the girlfriend had said, you know what, I don't want to go on this trip to Las Vegas anymore. I'd like to just go back to Pennsylvania. Would Chatwin have abandoned the existing plan and come up with a new plan on the spot despite his neuroatypicality and used force or fear at that point to ensure that the girlfriend made it to Las Vegas? We simply don't know. It would be purely speculative on this record evidence for a trial or fact to conclude Chatwin had that necessary willingness to use force or fear that would turn the deception into holding. But even if the Court is not with us on the sufficiency points, at a very minimum, the parties agree this case should go back for retrial on the judicial coercion issue. And as part of the sufficiency analysis, which the Court should still conduct, it should explain that the holding element does require willingness to use force or fear if necessary, if it's a deception case. And that way, at a retrial, the parties will know, the district court will know what the proper jury instructions regarding holding are, and we could avoid this potential dispute if there were a second direct appeal in this case. I see I'm approaching the five-minute mark, so if there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you, counsel. Good morning, Your Honors, and may it please the Court. Andrew Null on behalf of the United States. John Chatwin deceived his girlfriend, Jamie Fedden, into accompanying him on a cross-country trip to Las Vegas on the false premise that the couple would be vacationing in or relocating there. Chatwin, in fact, planned the trip for the purpose of murdering Jamie. And once in the Nevada desert, he bound Jamie to a signpost with zip ties and placed duct tape over her nose and mouth, causing her to asphyxiate to death. That conduct is federal kidnapping, resulting in death. So the government agrees this has to go back, right? Yes, Your Honor. And in doing so, we've got to reach the – just like when you wrongly give an Allen charge, we still have to talk about sufficiency and reach a determination on the scope of what holding means under the kidnapping statute? So I think that's right, Your Honor. We've – I think as this Court did in Williams, it should still reach the sufficiency issues. We've, of course, offered narrower theories under which the evidence is sufficient, even under Chatwin's, we think, legally incorrect view of the statute – the scope of the statutory element of holding. The Court could resolve the case on those narrow grounds, but I think we agree with Mr. Chatwin that because we anticipate – I mean, with Mr. Chatwin, that because we anticipate retrying him, these issues will still arise on remand at retrial, even if the Court doesn't resolve the questions in this case, because the government has a right to pursue all legally valid theories and would continue to pursue a deception related theory in addition to the more narrow theories. And so I do think this Court, you know, is up to your – for your discretion, but we think the deception issue is a legal issue that is fully briefed in this Court and is ripe for determination by this Court should it choose to reach it. And we do think that Chatwin in particular is very critical on this point. Counsel, before you move off this subject, do you have in mind the question – the first question I asked your friend? I do, Your Honor. Do you have any different answer than your friend gave? I don't, Your Honor. Judge Bennett, I would just point you to page 2381 and 2382 of the excerpts of record. That is the short colloquy during which the courtroom deputy –  The court acknowledges these notes are numbered, I think, 6, 7, and 8. And the courtroom deputy says that they have the earlier notes. That's all that's in the record. The parties were not made aware of these earlier notes. And as you know from our brief, we weren't aware of them until we sought them for purposes of appeal. We just frankly don't know what happened. And I think everything that transpired thereafter was infected by what we understood the facts to be. No, my only question was do we know why we reached this stage? And I appreciate both your and your friend's candor. Thank you, Your Honor. It's unusual to be sure. It's very unusual. And so, again, as in Williams, I think there's nothing that – knowing the facts as we know now, that could have been done to avoid what we think is the right result, which is a retrial here. Well, certainly nothing by you or your friend. Of course. But going back to the holding element, Judge Bennett, I just wanted to address Chatwin, which, as you pointed out, has several statements, including the fact that the act of holding can include both a physical and mental restraint and the fact that one can confine an individual through, among other things, deception. I think important for the purposes of how you read that statement is the fact that, as the Supreme Court explained in its opinion, that case proceeded on factual stipulations, and so there was no reference in the factual stipulations to any possible use of force or fear against the young woman who had been married to this individual and brought to Utah. And I think that is critical for understanding the fact that it would have been the easiest thing for the Supreme Court to say that deception alone is not sufficient for holding, given the absence of any allegations or stipulated facts, that there was any force or fear placed upon the woman. And so I think that statement is quite relevant because the Court didn't rely on the fact that this was a deception case, but instead went on to say it was — there was no holding against the will of the woman. And that, I think, is critical for understanding why, in our view, no circuit has foreclosed the use of deception as a continuation of the initial seizure when evaluating the holding element. On a — we have a more narrow theory as well, though, that even under Mr. Chatwin's view of the statute, the evidence was sufficient to show that he both intended to and was willing to use force and, in fact, did use it against Jamie. I would point you to page 39 to 40 of our brief, where we say, contrary to what Mr. Chatwin argued this morning, that the evidence was sufficient to show that Chatwin was willing to and, in fact, did use force against Jamie. We obviously emphasize the fact that he did use that force. He used the zip ties against Jamie. But that ultimately substantiates his willingness to do so antecedently. And I would also point you to page 2356 of the excerpts of record. This is the closing argument for the government. And there we say that we reference the free-to-leave requirement, and that is a reference to the jury instructions on the holding element that say that someone who is free to leave is not held. And we say, do you think for one minute Chatwin is letting her go? He's got in his car a black backpack, duct tape, and zip ties. There's not a chance that he's letting her go. So although, of course, we emphasize the broader deception evidence at trial because that was our primary theory and we didn't think we have to actually show force or fear, but we did put into evidence the use of force and the ultimate use of the zip ties against Jamie. And as Judge Nguyen pointed out in a question in the previous case, that the government's entitled to all reasonable inferences on a sufficiency challenge. That's correct, Your Honor. And so I think that is — I think at a minimum we have the narrow view here. We think on the broader view the deception qualifies for all the reasons we've laid out in our brief. Just on the innocuous examples that Chapman's counsel gave both in his brief and here today, for example, a surprise party, I think it's critical to remember that the holding element, as the Supreme Court explained in Chapman, requires not just restraint of the person, but restraint against the will of that person. And so a welcome surprise, a wife who shows up to a surprise party, I don't think there's any reasonable way one could construe that, you know, constraint as against her will once she's fully apprised of the circumstances. Even in the case of a curmudgeonly idiosyncratic person who hates surprise parties, we think the willfulness requirement in the statute takes care of those examples because the individual still has to be aware in the general sense of Brian v. United States that their conduct is against the law. And I think we have that in spades here with respect to Mr. Chapman's both core search histories throughout the two months leading up to the travel and during the travel itself, including the night before the couple arrived in Nevada when he searched from Colorado, the words, dump body Nevada. But also just the more general course of conduct. We have that in spades here. So for all those reasons, we think the evidence was clearly sufficient to sustain the kidnapping resulting in death count here, and this court should permit retrial. I'm happy to answer any questions the court might have about the suppression issues or the instructional issues. With respect to the instructional ones, I think the court could leave several of those for retrial where they might be infected by the evidence that comes in. But if you resolve the sufficiency issues, I think that will take care of several of the instructional ones. But unless the court has any further questions, we would ask that you remand for a retrial but affirm the sufficiency of the evidence and the denial of the motion to suppress. Judge Gould, do you have any additional questions for the government? No, I don't. Thank you, counsel. Thank you, Your Honors. I'd like to try to make four points on rebuttal. First, government counsel referenced how in Chatwin the Supreme Court used the term mental restraint. In our view, that primarily means fear. Similarly, in Boone, Boone talks about psychological force, that deception is not enough. There has to be a willingness to use physical or psychological force. Again, psychological force primarily means fear. Maybe there are other forms of psychological force or mental restraints out there, but the simplest way to think about it is fear threats things along those lines. So in our view... Counsel, why wouldn't that also include tricking someone into thinking that they were being moved for a different purpose? Because deception is not enough unless it's backed up by something more like the willingness to use physical force or psychological force, in other words, fear. So, for example, in Boone, the Boone, the Eleventh Circuit explained inveigling or decoying someone across state lines, tricking them across state lines isn't in and of itself prescribed by the statute. The fact finder has to determine whether the alleged kidnapper had the willingness and intent to use physical or psychological force to complete the kidnapping in the event that the deception failed. So deception, trickery, that's not enough. These other circuits, including Boone and the Eleventh Circuit, require some other form of psychological force on top of trickery or deception, and in our view, that typically means fear. As for the government's backup sufficiency argument, which is the transitory holding, I just want to briefly explain our position, which is that under this Court's decision in Jackson, when there is a separate crime and there is holding inherent in that separate crime, restraint inherent in that separate crime, those restraints do not amount to holding under the Federal Kidnapping Statute, and the government cannot bootstrap a kidnapping charge on top of that other charge. Here there is a state capital murder prosecution pending. The restraints that were applied were coextensive with the government's theory of an intentional killing, and so under Jackson, as well as the Tenth Circuit's decision in Murphy, those restraints are not enough to qualify as holding to support a kidnapping charge, and that was not a theory that was properly presented to the jury below. The government did not squarely argue, hey, if you don't think deception amounts to holding, well, there was holding that occurred with the restraints to the pool. That wasn't squarely presented to the jury. The defense still sought a jury instruction on that issue. The government opposed it, and the trial court failed to give it. So in our view, it's inappropriate for the court to reject a sufficiency argument based on a new legal theory that the government did not present below. What is the current status of the state case? It's pending. I don't know whether it's gone to preliminary hearing yet. Our client has been transferred from Bureau of Prisons Custody to the Lincoln County State Facility. I'm aware that there have been recent proceedings in that case. I just don't know how far along it is at this time. That's fine. Thank you. As far as the sufficiency standard, yes, the government is entitled to reasonable inferences, but there has to be more than mere speculation, and that's from this Court's Nelvis case. So there has to be enough evidence from which a rational trier of fact can draw a nonspeculative inference. And based on the evidence at trial, the government did not present sufficient evidence to allow a nonspeculative inference that if, for example, the girlfriend in Colorado had said, I don't want to be with you anymore, put me on the next plane back to Pennsylvania, that Chapman would have resorted to force or fear at that point to complete the trip to Las Vegas. Finally — Well, the government did reference the Internet searches and the evidence of intent to use some physical force. Even if that was not squarely argued, I don't know why that would be speculative. Because these are two different types of intent. They're very different types of intent. There's this intent to — alleged intent to kill, assuming everything goes according to plan. And then there's this backup question of willingness to use force, where the question is, what would Chapman have done if things didn't go according to plan and the girlfriend decided to leave early? They're just two different types of intent, and it is speculative to say that intent number one proves intent number two. But again, even if the Court does not agree on the sufficiency argument, it should still clarify the holding element when it conducts its sufficiency analysis and adopt the willingness to use force or fear standard. Finally, government counsel referenced willfulness as a potential limiting construction on its view of the statute. There are two problems with that argument. The first is a line of authority that goes back to this Court's decision in Gani, G-A-W-N-E, where the Court said, an illegal purpose need not be shown. The kidnapper's motivation is not an element of the offense. The policy of the statute is offended, though the motivation for the kidnapping be laudable. Kidnapping is indesirable in itself without regard to its purpose. So that strain of authority, in our view, is inconsistent with the government's argument that there needs to be knowledge of wrongful conduct. And if I could just complete the second part of that answer. Please. The willfulness word in the statute is tied to one of the many jurisdictional nexuses for a Federal charge. So it's willfully transport in interstate commerce. The word willful does not appear with the other bases for Federal jurisdiction, such as the use of interstate commerce facilities. So it would not make sense to interpret willfulness as applying to the entire statute and requiring knowledge of wrongful conduct. If there are no further questions, we would ask the Court to order an acquittal or, at a minimum, reverse for a new trial. Thank you very much to both sides for your helpful arguments this morning. The matter is submitted and we'll issue our decision in due course.
judges: GOULD, NGUYEN, BENNETT